UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-25194-GAYLES

HIALEAH ANESTHESIA
SPECIALISTS, LLC, et al.,
    Plaintiffs,

   v.

COVENTRY HEALTH CARE OF
FLORIDA, INC.,
    Defendant.
_____/

# ORDER

**THIS CAUSE** comes before the Court on the Motion to Remand filed by Plaintiffs Hialeah Anesthesia Specialists, LLC; Palmetto Anesthesia Specialists, LLC; South Florida Anesthesia & Pain Treatment, P.A.; and Treasure Coast Anesthesia Group, P.A. [ECF No. 10]. Defendant Coventry Health Care of Florida, Inc. ("Coventry"), removed this action, pursuant to 28 U.S.C. § 1441, from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to this Court on December 14, 2016. The Plaintiffs now seek to remand the action back to state court, arguing that Coventry's notice of removal was untimely and that their claims are not completely preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The Court has carefully considered the parties' briefs, the record in this case, and the applicable law, and is otherwise fully advised in the premises. For the reasons that follow, the motion to remand shall be granted.

**I. BACKGROUND**

The Plaintiffs are medical groups who provided anesthesiology services to patients covered under health plans insured, operated, or administered by Coventry. Compl. ¶¶ 14, 17. The Plaintiffs

1

are out-of-network providers—they do not have outstanding agreements with Coventry for the treatment of Coventry patients. *Id.* ¶ 19. Each Plaintiff billed Coventry for anesthesiology services it provided to Coventry patients at its individual rate with the understanding that Coventry had agreed to pay it the reasonable value for its services. *Id.* ¶ 21. Coventry adjudicated the claims for payment for these services and determined that they were covered under each patient's individual plan; and, while it paid the Plaintiffs for the services, it did so at rates lower than what the Plaintiffs charged. *Id.* ¶¶ 18, 22.

On May 13, 2016, the Plaintiffs filed a civil action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging claims for breach of implied-in-fact contract and unjust enrichment/breach of implied-in-law contract. *See id.* ¶¶ 41-66. During the course of the state court litigation, on November 14, 2016, the Plaintiffs produced a spreadsheet identifying the specific medical claims at issue, including patient names, dates, diagnoses, service codes, and amounts charged. Notice of Removal ¶¶ 3-4. Some of these patients had health plans governed by ERISA. *Id.* ¶ 4. Based on the facts contained in the spreadsheet, Coventry removed the case to this Court. The Plaintiffs subsequently filed the instant motion to remand.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1441, a case filed in state court can be removed to federal court if the district court has original jurisdiction, which exists if there is federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction requires that a case "arise under" the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, a case "arises under" federal law if federal law creates the cause of action or if a substantial disputed issue of federal law is a necessary element of a state law claim. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). Diversity jurisdiction requires fully diverse citizenship of the parties and an amount in controversy over $75,000,

assessed at the time of removal. 28 U.S.C. § 1332(a); *see also Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011).

The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction, *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012), and it bears the burden of demonstrating that removal is proper, *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). A district court is required to "'strictly construe the right to remove' and apply a general 'presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal punctuation marks omitted) (quoting *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001)). However, the court must be equally as vigilant in protecting a defendant's right to proceed in federal court as it is in respecting the state court's right to retain jurisdiction. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

## III. DISCUSSION

### A. *Preemption*

The perennial well-pleaded complaint rule holds that federal question jurisdiction over an action exists only when the plaintiff's claims, as stated in the complaint, arise under federal law notwithstanding any federal defenses. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1907). The Plaintiffs' Complaint here alleges only state law claims, so there is no jurisdiction under the well-pleaded complaint rule. However, "when a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state law claim can be removed, because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality

3

based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

ERISA is one of those federal statutes. Complete preemption is available under ERISA's civil enforcement mechanism, section 502(a) of the statute[1]—a provision with "such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). A state law claim must fit within the civil enforcement provision to be completely pre-empted. *Taylor*, 481 U.S. at 66. To determine whether a claim is preempted in this way, a court must engage in the two-part test set forth by the Supreme Court in *Aetna Health Inc. v. Davila* by inquiring "(1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009) (citing *Davila*, 542 U.S. at 210).

The first part of the *Davila* test "is satisfied if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Id.* at 1350. As to the first requirement of this first part, the Eleventh Circuit in *Connecticut State Dental*, adopted a "'rate of payment' versus 'right of payment' test," under which "claims involving only underpayment are not preempted," while "claims that were partially denied because coverage was not afforded for all the submitted procedures may be preempted." *Id.* at 1349-50 (citing *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 533 (5th Cir. 2009)); *see also Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) ("[A] 'rate of payment' challenge does not necessarily implicate an ERISA plan, but a challenge to the 'right of payment' under an ERISA plan does.").

---

[1] A "participant or beneficiary" may sue under the civil enforcement provision "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The parties seem to agree that the *Connecticut State Dental* test can be (and has been) applied in cases between a provider and insurer in which the provider's claims arise under the terms of its provider agreement with the insurer. *See, e.g.*, *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1245-46 (S.D. Fla. 2016). The agreement ends there, however, as Coventry contends that the test can be invoked **only** in this type of case. *See, e.g.*, *Alliance Med, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, No. 15-0171, 2016 WL 3208077, at *3 (N.D. Ga. June 10, 2016) (stating that the test "is irrelevant in cases involving out-of-network providers because a 'rate of payment' dispute is governed by the provider agreement"). The Plaintiffs, by contrast, assert that the test applies in cases, such as this one, where an out-of-network provider brings claims under an implied contract with the insurer. *See, e.g.*, *Coast Plaza Doctors Hosp. v. Ark. Blue Cross & Blue Shield*, No. 10-6927, 2011 WL 3756052, at *4 (C.D. Cal. Aug. 25, 2011).

The Court must resolve this disagreement, and *Coast Plaza* is instructive in doing so. There, plaintiff Coast Plaza (an out-of-network Blue Cross Blue Shield provider) provided medical treatment to the insureds of the defendants (Blue Cross Blue Shield companies). The insureds all agreed by assignments of benefits to have the defendants pay Coast Plaza. However, the defendants issued checks directly to the insureds, from whom Coast Plaza was typically unable to collect. Coast Plaza filed suit in California state court asserting various state law claims, alleging that the defendants intentionally paid the patients in retaliation for Coast Plaza's refusal to become an in-network provider. The defendants removed the matter to federal court, arguing that Coast Plaza's state law claims were completely preempted under ERISA. *Id.* at *1.

Though Coast Plaza did not have "a 'direct' contractual relationship of the same nature as those present in 'in-network' provider agreements," the court looked to California law recognizing that medical providers have an "implied-in-law right to recover for the reasonable value of their services." *Id.* at *4 (quoting *Bell v. Blue Cross of Cal.*, 31 Cal. Rptr. 3d 688, 695 (Ct. App. 2005)).

According to the court, this implied-in-law right "implicates a legal duty owed by Defendants-insurers that is independent of any ERISA-governed plan." *Id.* Finding that Coast Plaza had an implied contract with Blue Cross, the court held that ERISA did not completely preempt Coast Plaza's claims and granted its motion to remand. *Id.*

The broad conclusion of the court in *Bell v. Blue Cross of California*, which informed the *Coast Plaza* court's decision, that medical providers have an implied-in-law right to recover from insurers, was itself premised on a California statutory provision mandating that insurers reimburse providers for emergency services and care provided to their enrollees. *Bell*, 31 Cal. Rptr. 3d at 694-95 (citing Cal. Health & Safety Code § 1371.4(b)). This Court has been unable to find a decision of any court making a similar holding to *Bell*'s under Florida law (and the parties have not directed it to any), though a statutory provision *similar* to the one on which the *Bell* court relied can be found in Florida law. Section 641.513 of the Florida Statutes mandates, *inter alia*, that an insurer reimburse a medical provider who does not have a contract with an insurer but provides emergency services to the insurer's enrollees. Notably, Florida courts have found that state law claims brought under this provision by healthcare providers who rendered emergency medical services to an insurer's subscribers were not preempted by ERISA. *See, e.g.*, *C.N. Guerriere, M.D., P.A. v. Aetna Health, Inc.*, No. 07-1441, 2007 WL 3521369 (M.D. Fla. Nov. 15, 2007). Granted, the Plaintiffs here do not assert claims under section 641.513, but they do *rely on* that provision in arguing for the recognition of an implied contractual relationship between them and Coventry. *See* Compl. ¶¶ 24-27. Their argument in favor of this recognition is supported by a recently enacted Florida statutory provision (taking effect July 1, 2016), which creates an obligation for insurers to pay fees to an out-of-network "provider of covered *non*emergency services provided to an insured." Fla. Stat. § 627.64194(3) (emphasis added); *see also* Pls.' Reply at 4 n.2. The Court need not announce a holding as sweeping as *Bell*'s to rule on the Plaintiffs' motion, but it certainly can

see how such a holding—grounded in Florida statutory law—could be warranted.

* * *

The Eleventh Circuit in *Connecticut State Dental* explains that rate-of-payment/right-of-payment test "is a useful means for assessing preemption of healthcare provider claims based upon a breach of ***an agreement*** separate from an ERISA plan." 591 F.3d at 1350 (emphasis added). Coventry argues that the use of the language "an agreement" necessarily means that the test applies only in cases arising from breach of an express provider agreement between an in-network provider and the insurer.

The Court disagrees. No part of *Connecticut State Dental* supports the proposition that an express written provider agreement ***must*** be present before the rate-of-payment/right-of-payment test can apply and that, in the absence of a written agreement, any claim for payment must be preempted. In the Court's view, *Connecticut State Dental* leaves the proverbial door sufficiently open that the test could come into play in a case like this one, involving allegations of an implied "agreement"—be it implied-in-fact or implied-in-law—between an out-of-network provider and an insurer.

At the very least, there is an uncertainty as to the breadth of the "an agreement" language. It could extend to cover an implied agreement like the one the Plaintiffs allege existed between each of them and Coventry. In such case—provided that the Plaintiffs assert only a rate-of-payment dispute—the claims ***would not be*** preempted and, thus, there would be ***no*** jurisdiction. Or it could not so extend. In such case—provided that Coventry satisfies the other *Davila* requirements—the claims ***would be*** completely preempted and, thus, there ***would be*** jurisdiction. As this uncertainty casts doubt on the propriety of the Court's subject-matter jurisdiction, the Court must resolve the uncertainty in favor of remand. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand . . . ."); *Burns*

*v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). To effect this resolution, the Court must find that the *Connecticut State Dental* test governs in the instant circumstances. It would not be appropriate to hamstring the Plaintiffs' ability to keep their case in state court by depriving them of the opportunity to invoke the test and show whether their claims fit squarely within its bounds.

To apply the test, the Court must determine the character of the Plaintiffs' claims: do they challenge the ***rate*** of payment the Plaintiffs received from Coventry, or do they seek the ***right*** to be paid? In *Connecticut State Dental*, the Eleventh Circuit found that two of the plaintiffs' claims were preempted because they were "hybrid claims." 591 F.3d at 1350-51. In other words, the complaint "challenged ***both*** the rate of payment ***and*** the right of payment under the ERISA plan because it alleged that the administrator both paid them the wrong rate and denied payment altogether for 'medically necessary' services, a coverage determination defined by the beneficiary's ERISA plan." *Borrero*, 610 F.3d at 1302. These Plaintiffs' Complaint is not based on any claims that were partially denied by Coventry. The Complaint concerns only claims which Coventry has adjudicated, deemed covered by the respective patients' health plans, and paid, so there is no "hybrid claim" issue. The Complaint is also not derivative of claims the patients could have brought to vindicate any right under ERISA. Instead, the Plaintiffs sue Coventry to remedy a breach of quasi-contractual obligations owed to them alone, not to Coventry's insureds. And they seek to hold Coventry accountable to pay them a fair market value for the services they provided to Coventry's insureds. *See Sheridan Healthcorp*, 161 F. Supp. 3d at 1246 ("Sheridan is in fact suing Defendants only for breach of its agreement, and in so doing, does not assert allegations of any ERISA violations. . . . No interpretation of the ERISA-regulated employee health benefit plan is necessary to decide this case."). In short, it is clear that the Plaintiffs do not allege that Coventry has not paid them; they

allege simply that Coventry has not paid them ***enough***.

So applying the *Connecticut State Dental* test leads to one conclusion: this dispute is wholly over the rate of payment. Consequently, the Court finds that the Plaintiffs' claims fall outside the scope of section 502(a) of ERISA.[2] *See* Final Order of Remand at 4-5, *Recovery Vill. at Umatilla, LLC v. United Behavioral Health, Inc.*, No. 15-62374, ECF No. 37 (S.D. Fla. Sept. 12, 2016) (finding that "because Plaintiff's claims are rate of payment, rather than right of payment claims, and because they are based on contractual principles beyond the scope of ERISA, these claims are not completely preempted by ERISA"); Order Granting Pl.'s Mot. to Remand at 5, *Recovery Vill. at Umatilla, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 15-61414, ECF No. 52 (S.D. Fla. Aug. 28, 2015) ("If all the claims at issue were pre-authorized and paid by Defendants, as Plaintiff contends, such claims would not fall within the scope of ERISA, and [the plaintiff]'s state-law claims would not be completely preempted. . . . [T]he Court must resolve doubt regarding its subject-matter jurisdiction in favor of remand."). No further analysis under *Davila* is necessary. *See Ortho-paedic Care Specialists, P.L. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 12-81148, 2013 WL 12095594, at *2 (S.D. Fla. Mar. 5, 2013) (remanding case after finding only that the defendant failed to meet the first requirement of the first prong of *Davila*).

The Plaintiffs' claims are not preempted. Accordingly, the motion to remand is granted.

**B.    *Fees and Costs***

In the event the Court granted their motion, the Plaintiffs seek an award of attorney's fees and costs. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," but

---

[2]    That a scant few of the plans involved happen to be ERISA plans does not alter this conclusion. The Court would not be required to interpret or even look to ERISA to resolve these claims. *See Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) ("[T]he bare fact that the [ERISA] Plan may be consulted in the course of litigating a state law claim does not require that the claim be extinguished by ERISA's enforcement provision."); *see also Sheridan Healthcorp.*, 161 F. Supp. 3d at 1246.

9

payment may be awarded, "[a]bsent unusual circumstances[,] . . . only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court finds that Coventry *did* have an objectively reasonable basis for seeking removal, given the above-noted uncertainty regarding the breadth of the *Connecticut State Dental* test's application to cases brought against insurers by out-of-network providers.

The Plaintiffs also argue that fees and costs are warranted because Coventry's removal was untimely. An untimely removal can give rise to an award of fees and costs. *See Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 893 (11th Cir. 2011) (per curiam). However, the Court finds that Coventry's removal was timely. *See S. Broward Hosp. Dist. v. Coventry Health & Life Ins. Co.*, No. 14-61157, 2014 WL 6387264, at *4 (S.D. Fla. Nov. 14, 2014) ("A review of the Plaintiff's Complaint shows that Defendants were not on notice of which claims were at issue in the instant lawsuit because it does not identify any of them. . . . The Court finds that Defendants obtained notice of the potential argument for ERISA preemption at the time the[] claims were identified . . . , the date when Plaintiff produced a spreadsheet which disclosed the medical claims at issue."). Because the claims at issue here were not identified in the Complaint, the Court will not hold that Coventry should have "guess[ed]" as to this action's removability based on the Complaint's use of a few ERISA-related buzzwords and phrases, as this would "encourag[e] premature, and often unwarranted, removal requests." *Goldstein v. GFS Mkt. Realty Four, LLC*, No. 16-60956, 2016 WL 5215024, at *5 (S.D. Fla. Sept. 21, 2016) (quoting *Vill. Sq. Condo. of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 09-1711, 2009 WL 4855700, at *4 (M.D. Fla. Dec. 10, 2009)). The Plaintiffs' request for fees and costs is denied.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Remand [ECF No. 10] is **GRANTED**. This action is **REMANDED** in its entirety to the Circuit

Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

**IT IS FURTHER ORDERED** that the Plaintiffs' request for an award of attorney's fees and costs, pursuant to 28 U.S.C. § 1447(c), is **DENIED**.

This action is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of June, 2017.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE